UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| DAVID E. CLARK, | ) | CASE NO. 4:10 CV 495 |
| | ) | |
| Plaintiff, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| J. PARKER, *et al.*, | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff filed the above-captioned action under 42 U.S.C. § 1983 against Ohio State Penitentiary ("OSP") Unit Manager Administrator J. Parker, former OSP Unit Manager Mr. Hill, Acting OSP Institutional Inspector Ted Jackson, Rules Infraction Board (RIB) Chairman Lieutenant Ritz, RIB Member Ms. Lugle, OSP Sergeant Tanner, Ohio Department of Rehabilitation and Correction ("ODRC") Chief Inspector John Doe, ODRC Assistant Chief Inspector John Doe, OSP Warden David Bobby, and ODRC Director Ernie Moore. In the complaint, plaintiff alleges he was unfairly charged with conduct violations and his property was taken. He seeks monetary and injunctive relief.

**I. Background**

On March 6, 2008, Mr. Clark sent a communication to Ms. Parker which resulted in the filing of conduct charges. In the kite, he criticized her supervision of OSP Sergeant Kleinknect, who Mr. Clark accused of theft of his property. He claims he told Ms. Parker that if she continued to allow her subordinates to abuse their positions "to the point where the situation became out of control" she would he held responsible. (Compl. at 4.) He was placed in the segregation unit the

following day, and charged with threatening Ms. Parker. His property was packed for him by corrections officers.

Mr. Clark contends he was not provided with a fair RIB hearing. He alleges the hearing was not held in a timely manner pursuant to prison policy. He states that the kite in question was not attached to the conduct report and he was denied the ability to call relevant witnesses. The kite was eventually produced by Ms. Parker. She testified that she felt threatened by its content. Mr. Clark argued that making someone feel threatened was different than making a threat. The RIB found that a rules infraction had occurred and sanctioned Mr. Clark to a period of time in segregation.

While in segregation, Mr. Clark made several demands to be given his legal papers to continue working on his criminal appeals and his federal civil rights case. He contends Mr. Hill and Institutional Inspector Jackson did not intervene to obtain the relief Mr. Clark requested. He went on a hunger strike and with the help of the Warden, was able to view his legal materials. Mr. Clark contends the materials were brought to a strip cage in three plastic garbage bags. He claims he was told he had ten minutes to find what he needed.

Upon his release from segregation, Mr. Clark was told some of his property would not be returned. He indicates that Sergeant Kleinknect brought the property to an area by the strip cages and indicated he considered some of it to be contraband. He went through the property with Mr. Clark in a manner Mr. Clark believed to be disrespectful and intended to provoke a negative reaction. Although Mr. Clark contends he did not "take the bait," he was taken to segregation for threatening Sergeant Kleinknecht. He states he spoke to Mr. Hill about the incident and Officer Tanner was sent to inventory Mr. Clark's property. Mr. Clark indicates that Officer Tanner was very polite and agreed to return most of the property in question. Mr. Clark signed a contraband slip authorizing the destruction of the remaining property. He claims he was released from segregation without being charged. When he returned from segregation, he found some of his personal papers had not been returned. He claims that the contraband slip he signed with Officer Tanner had been altered to permit destruction of his personal papers. He filed grievances but they

...

did not receive the response he desired.

Mr. Clark claims his First, Eighth and Fourteenth Amendment rights were violated. He asserts Ms. Parker retaliated against him for attempting to redress a grievance in violation of the First Amendment. He claims he was placed in segregation and deprived of his personal property without due process. Finally, he contends his Eighth Amendment rights were violated by the totality of the events.

## II.  Analysis

Although *pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365 (1982) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520 (1972), the district court is required to dismiss an *in forma pauperis* action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[1] *Neitzke v. Williams*, 490 U.S. 319 (1989); *Lawler v. Marshall*, 898 F.2d 1196 (6th Cir. 1990); *Sistrunk v. City of Strongsville*, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

A. Eleventh Amendment

Warden Bobby and Director Moore are sued only in their official capacities. A suit against a public servant in his official capacity imposes liability on the office he represents. *Brandon v. Holt*, 469 U.S. 464, 471 (1985). Because both Mr. Bobby and Mr. Moore are employed by the State of Ohio, the claims against them in their official capacities are asserted against the State. The Eleventh Amendment is an absolute bar to the imposition of liability upon States and their agencies. *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005).

---

[1] An *in forma pauperis* claim may be dismissed *sua sponte*, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. *McGore v. Wrigglesworth*, 114 F.3d 601, 608-09 (6th Cir. 1997); *Spruytte v. Walters*, 753 F.2d 498, 500 (6th Cir. 1985), *cert. denied*, 474 U.S. 1054 (1986); *Harris v. Johnson*, 784 F.2d 222, 224 (6th Cir. 1986); *Brooks v. Seiter*, 779 F.2d 1177, 1179 (6th Cir. 1985).

B. Respondeat Superior

In addition, there are no allegations against Acting OSP Institutional Inspector Ted Hill, ODRC Chief Inspector John Doe, and ODRC Assistant Chief Inspector John Doe. It appears that these individuals are named in the Complaint because they ruled unfavorably on Mr. Clark's grievances. Responding to a grievance or otherwise participating in the grievance procedure, however, is insufficient to trigger liability under 42 U.S.C. § 1983. *Shehee v. Luttrell*, 199 F.3d. 295, 300 (6th Cir. 1999). The claims against these defendants are dismissed.

C. Retaliation

Mr. Clark claims Ms. Parker retaliated against him for exercising his right to file grievances. To state a prima facie case for retaliation, plaintiff must allege facts to establish that he engaged in protected conduct, that an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and that a causal connection exists between the first two elements. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). He fails to satisfy each of these criteria.

An inmate has a First Amendment right to file grievances against prison officials. *See Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). To state a constitutional claim, however, Mr. Clark must not only show he exercised this First Amendment right, but also must demonstrate that adverse actions were taken against him which were motivated, at least in part by the grievances he filed. *Thaddeus-X*, 175 F.3d at 394. Mr. Clark alleges that he criticized Ms. Parker's supervision of Sergeant Kleinknect, and told her that if she continued to allow her subordinates to abuse their positions "to the point where the situation became out of control" she would he held responsible. (Compl. at 4.) Ms. Parker deemed this to be a threat and filed conduct charges against Mr. Clark. There are no facts set forth in the complaint which reasonably suggest these actions were based upon an intent to retaliate against plaintiff for filing grievances, as opposed to being based on the conduct for which he was charged.

D. Due Process

4

Mr. Clark also claims he was deprived of liberty and personal property without due process. The Due Process Clause of the Fourteenth Amendment provides that a person may not be deprived of "life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. Prisoners have narrower liberty interests than other citizens as "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *Sandin v. Conner*, 515 U.S. 472, 485 (1995). The question of what process is due is reached only if the inmate establishes the deprivation of a constitutionally protected liberty interest. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).

The Due Process Clause, alone, does not confer a liberty interest in freedom from state actions within the sentence imposed upon the inmate. *Sandin*, 515 U.S. at 480. "Discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by a court of law." *Id*. at 485. There is no general liberty interest in avoiding transfer to more adverse conditions of confinement. *Wilkinson*, 545 U.S. at 221. A prison disciplinary proceeding therefore does not give rise to a protected liberty interest unless the restrictions imposed as a result of the hearing constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Generally, unless placement in disciplinary confinement is accompanied by a withdrawal of good time credits or is for a significant period of time that presents an unusual hardship on the inmate, no interest to remain free of disciplinary confinement will be found in the case. *Sandin*, 515 U.S. at 484. Assignment to a super-maximum security prison, for example, triggers due process protections, *Wilkinson*, 545 U.S. at 224, while temporary placement in disciplinary confinement was considered to be "within the range of confinement normally expected for one serving an indeterminate term of 30 years to life," *Sandin*, 515 U.S. at 487. Similarly, the Sixth Circuit Court of Appeals has held a prisoner's designation as a member of a security threat group did not give rise to a liberty interest. *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir.2005). There is no indication Mr. Clark was sanctioned with the loss of good time credits. Moreover, he does not specify the

length of time he spent in segregation. The Complaint, however, suggests the placement was temporary. Absent other allegations, Mr. Clark's confinement in segregation does not impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.

Mr. Clark also fails to state a claim for deprivation of property without due process. To state a claim, he must plead and prove either that he was deprived of his property as a result of an established state procedure that itself violates due process rights; or that the defendants deprived him of his property pursuant to a random and unauthorized act and available state remedies would not be adequate to redress the deprivation. *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir 1991); *see Vicory v. Walton*, 721 F.2d 1062, 1064 (6th Cir. 1983). Mr. Clark is not challenging an established state procedure, statute or local ordinance. Instead, he is asserting he was deprived of his property due to unauthorized acts of the defendants.

To state a procedural due process claim based upon alleged unauthorized acts of the defendants, Mr. Clark must also plead and prove that state remedies for redressing the wrong are inadequate. *Macene*, 951 F.2d at 706; *Vicory*, 721 F.2d at 1064. A remedy is available in the Ohio Court of Claims. *See Haynes v. Marshall*, 887 F.2d 700, 704 (6th Cir.1989). He has not claimed the state remedy was inadequate. He therefore has not stated a claim for denial of procedural due process for the deprivation of his property.

    E. <u>Eighth Amendment</u>

An Eighth Amendment claim is stated where a prisoner is denied some element of civilized human existence due to deliberate indifference or wantonness. *Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *see also Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *Street v. Corrections Corp. of America*, 102 F.3d 810, 814 (6th Cir.1996). In sum, this prong of the Eighth Amendment affords protection against conditions of confinement which constitute serious health threats, but not against those which cause mere discomfort or inconvenience. *Hudson*, 503 U.S. at 9-10 (requiring extreme or grave deprivation). Prisoners

"cannot expect the amenities, conveniences and services of a good hotel." *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir.1988); *see Thaddeus-X v. Blatter,175* F.3d 378, 405 (6th Cir. 1999). Mr. Clark alleges he was placed in segregation for submitting a grievance which a prison official believed to be threatening. He claims his belongings were packed up haphazardly, and some of them were not returned to him. These are not the type of deprivations which trigger Eighth Amendment scrutiny.

### III. Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. § 1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[2]

IT IS SO ORDERED.

                                        */s/Dan Aaron Polster 7/20/10*
                                        DAN AARON POLSTER
                                        UNITED STATES DISTRICT JUDGE

---

[2]    28 U.S.C. § 1915(a)(3) provides:

     An appeal may not be taken *in forma pauperis* if the trial court certifies that it is not taken in good faith.